UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| TIMOTHY DOLAN,<br><br>Plaintiff,<br><br>vs.<br><br>HOLLYFRONTIER CORPORATION, FRANKLIN MYERS, MICHAEL C. JENNINGS, ANNE-MARIE N. AINSWORTH, ANNA C. CATALANO, CARNEY HAWKS, LELDON E. ECHOLS, MANUEL J. FERNANDEZ, R. CRAIG KNOCKE, ROBERT J. KOSTELNIK, JAMES H. LEE, and MICHAEL E. ROSE,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Timothy Dolan ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against HollyFrontier Corporation ("HollyFrontier" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to acquire refining, marketing and other businesses of Sinclair Oil Corporation ("Sinclair Oil") from The Sinclair Companies ("Sinclair Holdco") (the "Proposed Transaction").

2. On August 3, 2021, HollyFrontier announced that it had entered into a Business

Combination Agreement (the "Merger Agreement"). Under the terms of the Merger Agreement, HollyFrontier will acquire certain refining, marketing and other businesses of Sinclair Oil, which businesses were reorganized into Hippo Holding LLC ("Sinclair NewCo") after the signing of the Merger Agreement. In return, Sinclair Holdco will be issued stock in the new combined entity to be renamed "HF Sinclair Corporation" ("HF Sinclair"). Each share of common stock of HollyFrontier will be automatically converted into one share of common stock of HF Sinclair.

3.  On October 29, 2021, HollyFrontier filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC, which omits and/or misrepresents material information concerning, among other things: (i) financial projections for HollyFrontier, Sinclair NewCo and the pro forma combined company; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor Citigroup Global Markets Inc. ("Citi"). The failure to adequately disclose such material information renders the Proxy false and misleading.

4.  The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question

jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of HollyFrontier common stock.

9. Defendant HollyFrontier is a Delaware corporation with its principal executive offices located at 2828 N. Harwood, Suite 1300, Dallas, Texas 75201.  The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "HFC."

10. Defendant Franklin Myers has served as Chairman of the Board since February 2019, and a director of the Company since July 2011.

11. Defendant Michael C. Jennings has served as Chief Executive Officer and President of the Company since January 1, 2020, and has been a director since 2011.

12. Defendant Anne-Marie N. Ainsworth has served as a director of the Company since 2017.

13. Defendant Anna C. Catalano has served as a director of the Company since 2017.

14. Defendant Leldon E. Echols has served as a director of the Company since 2009.

15. Defendant Manuel J. Fernandez has served as a director of the Company since 2020.

16. Defendant R. Craig Knocke has served as a director of the Company since 2019.

17. Defendant Robert J. Kostelnik has served as a director of the Company since July 2011.

18. Defendant James H. Lee has served as a director of the Company since July 2011.

19. Defendant Michael E. Rose has served as a director of the Company since July 2011.

20. Defendants identified in paragraphs 10 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

21. Relevant non-party Sinclair Oil, a wholly owned subsidiary of Sinclair HoldCo, owns and operates the Sinclair and Casper refineries in Wyoming, and since early 2018 has been producing renewable diesel through its affiliate Wyoming Renewable Diesel Company LLC, the operations of which are co-located at the Sinclair refinery. Sinclair Oil's refining, marketing and certain other businesses have been reorganized into Sinclair NewCo.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company and the Proposed Transaction**

22. HollyFrontier is an independent petroleum refiner and marketer that produces high value light products such as gasoline, diesel fuel, jet fuel and other specialty products. HollyFrontier owns and operates refineries located in Kansas, Oklahoma, New Mexico, and Utah and markets its refined products principally in the Southwest U.S., the Rocky Mountains extending into the Pacific Northwest and in other neighboring Plains states. In addition, HollyFrontier produces base oils and other specialized lubricants in the U.S., Canada and the Netherlands, and exports products to more than 80 countries.

23. On November 3, 2021, the Company announced its third quarter 2021 financial results. For the quarter, HollyFrontier reported net income attributable to HollyFrontier

stockholders of $280.8 million, or $1.71 per diluted share, compared to a net loss of $(2.4) million, or $(0.01) per diluted share, for the quarter ended September 30, 2020.

24. On August 3, 2021, HollyFrontier issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> DALLAS -- HollyFrontier Corporation (NYSE: HFC) ("HollyFrontier") and Holly Energy Partners, L.P. (NYSE: HEP) ("HEP"), today announced they have entered into definitive agreements under which HollyFrontier and HEP will acquire Sinclair Oil Corporation and Sinclair Transportation Company from The Sinclair Companies ("Sinclair").
>
> HollyFrontier Transaction
>
> Under the terms of HollyFrontier's definitive agreement, HollyFrontier will acquire Sinclair's:
>
> - Branded marketing business and all commercial activities, which build on an iconic brand with exceptional customer loyalty;
> - Renewable diesel business, which made Sinclair a first-mover in the space; and
> - Two premier Rocky Mountain-based refineries.
>
> As part of the transaction, HollyFrontier will form a new parent company, named "HF Sinclair Corporation" ("HF Sinclair"), which will replace HollyFrontier as the public company trading on the NYSE. At the closing, existing shares of HollyFrontier will automatically convert on a one-for-one basis into shares of common stock of HF Sinclair, and HF Sinclair will issue approximately 60.2 million shares of common stock to Sinclair, representing 26.75% of the pro forma equity of HF Sinclair with a transaction value of approximately $1.8 billion based on HollyFrontier's fully diluted shares of common stock outstanding and closing stock price on July 30, 2021. HollyFrontier expects to seek the approval of its stockholders under applicable rules of the New York Stock Exchange for the issuance of the HF Sinclair shares to Sinclair.
>
> The transaction will transform HollyFrontier by accelerating its growth while increasing scale and diversification; it also allows HollyFrontier to integrate downstream into branded wholesale distribution. HF Sinclair will drive incremental free cash flow growth through its expanded refining business, integrated distribution network, leading renewable diesel position and growing lubricants and specialties business. The transaction is expected to be accretive to HF Sinclair's earnings, cash flow and free cash flow within the first full year, and to enable the combined company to increase its commitment to return cash to stockholders.

Upon closing of the transaction, HollyFrontier's existing senior management team will operate the combined company. Under the definitive agreements, Sinclair will be granted the right to nominate two directors to the HF Sinclair Board of Directors at the closing. The Sinclair stockholders have also agreed to certain customary lock up, voting and standstill restrictions, as well as customary registration rights, for the HF Sinclair shares to be issued to the stockholders of Sinclair. The new company will be headquartered in Dallas, Texas, with combined business offices in Salt Lake City, Utah.

HEP Transaction

Under the terms of the HEP transaction, HEP will acquire Sinclair's integrated crude and refined products pipelines and terminal assets, including approximately 1,200 miles of pipelines, eight product terminals and two crude terminals with approximately 4.5 MMbbl of operated storage. In addition, HEP will acquire Sinclair's interests in three pipeline joint ventures including: Powder Flats Pipeline (32.5% non-operated interest), Pioneer Pipeline (49.9% non-operated interest) and UNEV Pipeline (25% non-operated interest; HEP operates the pipeline and owns the remaining 75% interest). The purchase price for the HEP transaction will consist of an equity issuance of 21 million HEP common units and the payment of $325 million of cash, subject to customary closing adjustments, representing a transaction value of approximately $758 million based on the closing price of HEP units on July 30, 2021. Upon closing of the HEP transaction, HEP's existing senior management team will continue to operate HEP. Under the definitive agreements, Sinclair will be granted the right to nominate one director to the HEP Board of Directors at the closing. The Sinclair stockholders have also agreed to certain customary lock up restrictions and registration rights for the HEP common units to be issued to the stockholders of Sinclair. HEP will continue to operate under the name Holly Energy Partners, L.P.

The transactions have been unanimously approved by both HollyFrontier's and HEP's Board of Directors and are expected to close in mid-2022, subject to customary closing conditions and regulatory clearance, including the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. In addition, the HFC transaction and the HEP transaction are cross-conditioned on each other.

"HollyFrontier was formed through a transformational merger that facilitated a decade of significant stockholder returns along with growth and diversification into lubricants and renewables. We believe these transactions with Sinclair represent a similar inflection point, marking the beginning of our next chapter as HF Sinclair," said Mike Jennings, Chief Executive Officer of HollyFrontier and HEP. "With this accretive transaction, we are adding an integrated marketing business with an iconic brand while building on the strength of our expanded refining network, increasing our scale and accelerating the growth of our renewables business. Together, with

Sinclair and the dedicated employees who make it successful, we will be positioned to further build this business, capture synergies, and generate cash that will facilitate both capital return to stockholders and further investment in the business."

Mr. Jennings continued, "At the same time, this transaction will significantly extend the reach of HEP. Strengthened by an integrated network of Sinclair pipelines and storage facilities, HEP will have the scale and incremental earnings power to capture new organic growth opportunities and increase cash returns to unitholders."

Ross Matthews, Chairman and Chief Executive Officer of Sinclair commented, "As the oil and gas industry has evolved in recent years, we have carefully considered how best to position Sinclair's refinery and logistics assets and their related operations for the future. We're confident these businesses—and the dedicated employees who operate them—will continue to thrive under this new ownership structure. We expect these businesses will benefit significantly from HollyFrontier's and HEP's operational expertise, their network of refineries and midstream assets in the Western U.S., and the flexibilities that come with being part of a larger organization. Sinclair's employees bring a wealth of talent and capability, including in the production of renewable diesel, which will be an important and growing line of business for HF Sinclair. Sinclair also adds to HF Sinclair an outstanding and extremely successful brand marketing team. The transaction will help accelerate the ongoing rapid expansion of our Sinclair branded retail sites and the iconic DINO brand."

"We also believe that HollyFrontier and HEP are an excellent cultural fit, with a shared commitment to integrity and respect for our employees, our communities and the environment," Mr. Matthews explained. "We anticipate a seamless transition for our employees, distributors and other stakeholders following the closing of the transactions."

Strategic and Financial Benefits

HollyFrontier's acquisition of Sinclair's branded marketing business, refineries and its renewable diesel business is expected to:

- Diversify HollyFrontier's Business with the Addition of Sinclair's Iconic Brand and Integrated Distribution Network. By adding a branded wholesale business, the combined company will have the opportunity to grow an iconic brand across a range of HollyFrontier products and geographies. HollyFrontier will add a footprint of over 300 distributors and 1,500 branded locations across 30 states, with over 2 billion gallons of annual branded fuel sales.
- Increase the Size and Scale of HollyFrontier's Renewables Business. Sinclair's renewable diesel unit ("RDU"), co-located at its Sinclair, Wyoming refinery, processes soybean oil and tallow into renewable diesel

that is sold into California. The RDU has recently been expanded to produce 10,000 barrels per day and Sinclair is currently in the process of constructing a pre-treatment unit, allowing for further feedstock advantage and flexibility. Once the transaction is complete, the combined renewables business is expected to produce approximately 380 million gallons of renewable diesel per year and will be a leading renewable diesel producer in the U.S. with the size and scale to support logistical, procurement, feedstock and operational synergies.

- Add Complementary Rocky Mountain Refineries to HollyFrontier's Network. The Sinclair and Casper Refineries are complementary to HollyFrontier's existing refinery network and will expand the combined company's footprint in the Rocky Mountain region. Like HollyFrontier's existing refineries, the Sinclair refineries are feedstock advantaged, given their Northern Tier access to Canadian and Rocky Mountain crudes.

The combined refining network will feature seven complex refineries in the Rocky Mountains, Mid-Continent, Southwest and Pacific Northwest regions and will have a combined crude oil processing capacity of 678,000 barrels per stream day. Each refinery has the complexity to convert crude oils into a high percentage of gasoline, diesel and other high-value refined products.

- Deliver Financial Benefits Through Accretion and Cost Savings. The transaction is expected to be accretive to HF Sinclair's earnings, cash flow and free cash flow within the first full year. The transaction is expected to generate $100 million in run-rate synergies, as well as another $100-200 million in one-time savings during the first two years post close through working capital optimization.
- Enable the Combined Company to Generate Significant Free Cash Flow, Maintain Strong Balance Sheet and Facilitate the Return of Capital to Stockholders. HollyFrontier's credit profile is expected to be enhanced through reduced leverage, increased scale and diversification of businesses. We expect the combined company to maintain a strong balance sheet and investment grade credit rating. Fueled by significant free cash flow generation, the combined company expects to return capital to stockholders through both dividends and share repurchases.
- Deepen HollyFrontier's and Sinclair's Commitment to ESG and Sustainability. HollyFrontier and Sinclair share a common philosophy on commitments to environmental stewardship, sustainability and strong corporate governance. The combined business will build on each company's ongoing ESG efforts with increased renewables scale, a shared commitment to health and safety practices that best serve employees and communities, and a focus on risk management.

8

HEP's acquisition of Sinclair's integrated crude and refined product pipeline and terminal assets, including interests in three midstream joint ventures, is expected to:

- Expand HEP's Scale and Earnings. HEP's acquisition of Sinclair's expansive network of crude and product assets provides an integrated system with connectivity to key crude hubs in the Rockies, including Casper, Guernsey and Cheyenne. The acquired assets are expected to produce stable revenues supported by long-term minimum volume commitments from HF Sinclair.
- Extend HEP's Access to Growing Geographies through Finished Product Pipelines and Storage through Additional Joint Ventures. The assets in the acquired joint ventures serve multiple regions and are strategically located to meet increasing demand for finished product pipelines and storage.

Financial Targets and New Plan to Return Capital

HF Sinclair will focus on maintaining its investment grade balance sheet and delivering significant free cash flow while utilizing a balanced approach to capital investment and cash return to stockholders. As part of its commitment to cash return, HF Sinclair intends to focus on the following strategy:

- Near-term: Reinstate the regular dividend of $0.35/share no later than the second quarter of 2022.
- Mid-term (next 18 months): Return $1 billion of cash to stockholders through regular dividends and share repurchases by the first quarter of 2023.
- Long-term (2023 and beyond): Implement a target payout ratio of 50% of adjusted net income in the form of regular dividends and share repurchases.

HEP's acquisition of Sinclair's logistics assets is expected to provide enhanced earnings power, allowing for further deleveraging and incremental cash return to unitholders. For its commitment to cash return, HEP intends to incorporate the following strategy:

- Near-term: Continue to reduce leverage while paying a quarterly distribution of $0.35/unit.
- Mid-term (next 18 months): Reduce leverage ratio to 3.5 times EBITDA while targeting a distribution coverage ratio of 1.5 times. HEP also expects to increase its quarterly distribution with the option of repurchasing units with excess free cash flow.
- Long-term (2023 and beyond): Maintain leverage ratio below 3.0 times EBITDA while targeting a distribution coverage ratio of 1.3 times. HEP expects to continue increasing the quarterly distribution with the option of repurchasing units with excess free cash flow.

Advisors

Citi is serving as financial advisor to HollyFrontier, and Morgan, Lewis & Bockius is serving as HollyFrontier's legal counsel. Bank of America Merrill Lynch is serving as financial advisor to the HEP Conflicts Committee, Bracewell is serving as HEP's legal counsel and Morris, Nichols, Arsht & Tunnell LLP is serving as the HEP Conflicts Committee's legal counsel. Wachtell, Lipton, Rosen & Katz is serving as legal counsel to both HollyFrontier and HEP.

**The Proxy Contains Material Misstatements or Omissions**

25. On October 29, 2021, HollyFrontier filed the materially misleading and incomplete Proxy with the SEC. Designed to convince HollyFrontier's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) financial projections for HollyFrontier, Sinclair NewCo and the pro forma combined company; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Citi.

*Material Omissions Concerning Financial Projections for HollyFrontier, Sinclair NewCo and the Pro Forma Combined Company*

26. The Proxy omits material information regarding the financial projections for HollyFrontier, Sinclair NewCo and the pro forma combined company.

27. For example, with respect to the financial projections for HollyFrontier, the Proxy fails to disclose the line items underlying: (i) Consolidated Adjusted EBITDA; (ii) Adjusted Net Income Attributable to HollyFrontier Stockholders; and (iii) Deconsolidated Cash Flow from Operations.

28. With respect to the financial projections for Sinclair NewCo, the Proxy wholly omits Sinclair NewCo's net income projections and further fails to disclose the line items underlying: (i) Consolidated Adjusted EBITDA; and (ii) Deconsolidated Cash Flow from Operations.

29. With respect to the financial projections for the pro forma combined company, the Proxy fails to disclose the line items underlying: (i) Consolidated Adjusted EBITDA; (ii) Adjusted Net Income Attributable to HollyFrontier Stockholders; and (iii) Deconsolidated Cash Flow from Operations.

30. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Certain Forecasted Financial Information."

*Material Omissions Concerning Citi's Financial Analyses*

31. The Proxy fails to disclose material information concerning Citi's financial analyses.

32. The Proxy describes Citi's fairness opinion and the various valuation analyses performed in support of its opinion. However, the descriptions of Citi's fairness opinion and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, HollyFrontier's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

33. With respect to Citi's *Discounted Cash Flow Analysis* of the "Sinclair Downstream Business," the Proxy fails to disclose: (i) the standalone unlevered, after-tax free cash flows for the Sinclair Downstream Business for the fiscal years ending December 31, 2022, through December 31, 2025; (ii) the individual inputs and assumptions underlying the discount rate range of 8.3% to 9.3%; and (iii) the terminal values for the Sinclair Downstream Business.

34. With respect to Citi's *Discounted Cash Flow Analysis* of HollyFrontier, the Proxy fails to disclose: (i) the standalone unlevered, after-tax free cash flows for HollyFrontier for the

11

fiscal years ending December 31, 2022, through December 31, 2025; (ii) the individual inputs and assumptions underlying the discount rate range of 8.2% to 9.2%; and (iii) the terminal values for the Company.

35. With respect to Citi's *Selected Public Companies Analysis – Consolidated* for Sinclair Downstream Business, *Selected Public Companies Analysis – Sum-of-the-Parts* for Sinclair Downstream Business, *Selected Public Companies Analysis – Consolidated* for HollyFrontier and *Selected Public Companies Analysis – Sum-of-the-Parts* for HollyFrontier, the Proxy fails to disclose: (i) the individual multiples and financial metrics for each of the companies observed in the analyses; and (ii) the enterprise values for each company.

36. With respect to Citi's *Selected Precedent Transaction Analysis* for Sinclair, the Proxy fails to disclose: (i) the individual multiples and financial metrics for each of the transactions observed in the analysis; and (ii) the transaction values for each transaction.

37. The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Certain Forecasted Financial Information" and "Opinion of HollyFrontier's Financial Advisor" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

38. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

39. Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

40. During the relevant period, defendants disseminated the false and misleading Proxy

specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

41. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about HollyFrontier and Sinclair management's financial projections for HollyFrontier, Sinclair NewCo and the pro forma combined company and the financial analyses that support the fairness opinion provided by the Company's financial advisor, Citi. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

43. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

44. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

45. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

46. The Individual Defendants acted as controlling persons of HollyFrontier within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of HollyFrontier and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

49. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, HollyFrontier's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  November 24, 2021                                     LONG LAW, LLC

                                                              By  */s/ Brian D. Long*

**OF COUNSEL:**                                               Brian D. Long (#4347)
                                                              3828 Kennett Pike, Suite 208
**BRAGAR EAGEL & SQUIRE, P.C.**                               Wilmington, DE 19807
Alexandra B. Raymond                                          Telephone: (302) 729-9100
810 Seventh Avenue, Suite 620                                 Email: BDLong@longlawde.com
New York, NY 10019
Tel: (646) 860-9158                                           *Attorneys for Plaintiff*
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*